MERIDIAN MUTUAL INSURANCE COMPANY, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 15423.

United States Court of Appeals
Seventh Circuit.

Aug. 10, 1966.

James C. Jay, Gregory D. Buckley, Steers, Klee, Jay & Sullivan, Indianapolis, Ind., of counsel, for petitioner.

Richard M. Roberts, Asst. Atty. Gen., Tax Division, Thomas L. Stapleton, Attorney, U. S. Dept. of Justice, Washington, D. C., Lee A. Jackson, Gilbert E. Andrews, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before HASTINGS, Chief Judge, SCHNACKENBERG and KILEY, Circuit Judges.

KILEY, Circuit Judge.

Taxpayer, Meridian Mutual Insurance Company, has petitioned this court to set aside a decision of the Tax Court,[1] five judges dissenting, confirming deficiencies in income tax assessed against it by the Commissioner for the years 1958, $11,059.94, and 1959, $7,136.35. We have reviewed the court's decision, and affirm.

The facts were stipulated. Meridian, an Indiana corporation, is engaged in the fire and casualty insurance business as a mutual insurance company. For the taxable years 1958 and 1959 it filed its income tax returns on forms printed for the special use of mutual insurance companies.[2] An agent for the Commissioner examined Meridian's 1958 return and paid it a refund on August 19, 1959. For the taxable year 1959 Meridian used the computation method indicated by the Commissioner in the refund for 1958. Subsequently the Commissioner audited Meridian's 1959 return and determined that the wrong method was used in computing the tax for both years, that the refund for 1958 should not have been made, and assessed the deficiencies. The Tax Court agreed that Meridian's computation of its tax was erroneous and sustained the Commissioner's method.

The question of law here is whether Meridian's or the Commissioner's method of computation is correct and the answer depends upon the meaning of Sections 821 (a) (1–2)[3] and 1201(a)[4] of the Internal

---

1. 44 T.C. No. 35, CCH Tax Ct.Rep.Dec. 27,432 (June 17, 1965).

2. Form 1120 M, "For Mutual Insurance Companies Other than Life or Marine Insurance Companies or Fire Insurance Companies Issuing Perpetual Policies."

3. Sections 821–823 of the 1954 Code, which govern taxation of mutual insurance companies other than life or marine or certain others, were substantially changed by amendments made in the 1962 Revenue Act. For the years here involved we are concerned only with the Act as it existed prior to the 1962 amendments, and it is to these sections

Revenue Code of 1954, 26 U.S.C. §§ 821 (a) (1–2), 1201(a).

Section 821(a) provides "there shall be imposed" a tax computed under either paragraph (1) or paragraph (2) of the section, "whichever is the greater." Paragraph (1) provides a computation of "investment income," and paragraph (2) of "premium income." Section 821(e) provides "For alternative tax in case of capital gains, see section 1201(a)." Section 1201(a) provides for the substitute capital gains tax to be imposed "in lieu of" the tax imposed by section 821(a) (1) if the tax computed under that section is greater than the alternative tax computed under section 1201(a).

Meridian, in its 1958 return, computed its tax under section 821(a) (1) (the investment method), compared the result with its computation of the alternative tax under section 1201(a), then compared the lesser of them with the tax computed under section 821(a) (2) to find the "greater" of these latter two. The Commissioner in the 1959 examination thought this method of determining Meridian's tax liability erroneous. He recomputed the tax by comparing first the taxes computed respectively under paragraphs (1) and (2) of section 821(a), taking the greater of these two, which was the tax computed under paragraph (1) · next he compared the latter amount with the alternative tax computed under section 1201(a).[5] The result was a refund to Meridian for overpayment of 1958 taxes. Meridian prepared its 1959 return following the method used by the Commissioner in recomputing Meridian's 1958 tax. The Commissioner audited the 1959 return, and recomputed Meridi-

---

that textual references are made. The relevant portions of § 821 before the 1962 amendment provided (emphasis added):

> § 821. Tax on mutual insurance companies (other than life or marine or fire insurance companies issuing perpetual policies)
>
> (a) Imposition of tax on mutual companies other than interinsurers.—There shall be *imposed* for each taxable year on the income of every mutual insurance company * * * *a tax computed under paragraph (1) or paragraph (2), whichever is the greater:*
>
> (1) If the mutual insurance company taxable income (computed without regard to the deduction provided in section 242 for partially tax-exempt interest) is over $3,000, a tax computed as follows:
>
> [The so-called *investment method,* providing both a normal tax and a surtax.]
>
> \*   \*   \*   \*   \*
>
> (2) If for the taxable year the gross amount of income from the items described in section 822(b) (other than paragraph (1) (D) thereof) and net premiums minus dividends to policyholders, minus the interest which under section 103 is excluded from gross income, exceeds $75,000, a tax equal to 1 percent of the amount so computed, or 2 percent of the excess of the amount so computed over $75,000, whichever is the lesser. [This being the so-called *premium method.*]
>
> \*   \*   \*   \*   \*

> (e) Alternative tax on capital gains.— For alternative tax in case of capital gains, see section 1201(a).

4. Section 1201(a) of the 1954 Code, prior to the 1962 amendments, provided in pertinent part (emphasis added):

> § 1201. Alternative tax
>
> (a) Corporations.—If for any taxable year the net long-term *capital gain* of any corporation exceeds the net short-term capital loss, then *in lieu of the tax imposed by sections * * * 821(a) (1)* or (b), * * * *there is hereby imposed a tax* (if such tax is less than the tax imposed by such sections) which shall consist of the sum of—[method of computation provided].

5. As the Tax Court stated:

> It is obvious that if the amount computed under the premium method [821 (a) (2)] was the largest of the three amounts it would become the tax imposed, regardless of which of the two other amounts was the greater or lesser. And, if the amount computed under the premium method was the smallest of the three it could not become the tax imposed, for the lesser of the other two would qualify. The method of selection becomes important only where the amount computed under the premium method is the middle figure of the three, as was the case in these taxable years. Under the respondent's method it then becomes the tax imposed; under the petitioner's method it does not.

an's tax the way Meridian had computed it in its original 1958 return. This "about-face" by the Commissioner resulted in the assessment of deficiencies for both years.

The issue in the Tax Court was whether Meridian's tax liability should be computed as Meridian insists, and as the Commissioner did in correcting the 1958 return, by first computing the taxes under paragraphs (1) and (2) of section 821(a) to find the "greater," and then to compare the "greater" of those two, if it be the amount computed under paragraph (1), with the alternative tax computed under section 1201(a) to find the "lesser"; or whether, as the Commissioner contends, and as Meridian first computed its tax on its 1958 return, the tax computed under section 821(a) (1) should be compared with that computed under section 1201(a) to find the "lesser" and next compare that "lesser" with the tax computed under section 821(a) (2) to determine the "greater." The Tax Court decided the contention of the Commissioner was right and confirmed the assessments. The issue here is upon the correctness of that decision.

■■ Section 821(a) does not tell the order in which the computations and comparisons are to be made. This is a matter of inference. We are not persuaded by Meridian that because section 1201 was not referred to in section 821 (a) (1), but rather in section 821(e), Congress did not intend that sections 821 (a) (1) and 1201(a) should be compared first before the one or other is compared with section 821(a) (2). Sections 821(a) (1) and 821(e) are both parts of Part II of Sub-Chapter L—Insurance Companies, and should be read together and in their relationship. See

Duparquet Huot & Moneuse Co. v. Evans, 297 U.S. 216, 218, 56 S.Ct. 412, 80 L.Ed. 591 (1936). And Congressional logic cannot be said to have gone amiss in thinking that it was more desirable drafting to fit the additional tax provision in section 821(e) to facilitate seeing the relationship between sections 821(a) (1) and 1201(a). The Tax Court found no significance in favor of Meridian in this statutory arrangement, citing section 7806 of the Code.[6] We find none either.

■■ There is no merit in the contention that the word "imposed" in sections 821(a) and 1201(a) precludes the method of computation employed by the Commissioner and approved by the court. Section 821(a) stated "[t]here shall be imposed * * * a tax computed" under paragraph (1) or (2), whichever is greater. Those paragraphs provide the mode of computing the tax on "investment" and "premium" incomes respectively. Section 1201(a) reads "there is hereby imposed a tax" in "lieu of the tax imposed by * * * sections 821(a) (1) or (b) * * *." There is nothing in this arrangement to require that the "complete operation" of comparing paragraphs (1) and (2) be first done, and if the tax computed under paragraph (1) be the greater, that it *next* be compared with section 1201(a)'s tax to find the lesser. There are five sections of the Revenue Code for which the alternative tax in section 1201(a) may be substituted. It was Congressional prudence to provide these alternatives in section 1201(a) rather than distribute them into the various sections affected. By section 821(e) Congress virtually made section 1201(a) part of the "complete operation" in Part II of Sub-Chapter L.[7]

6. INT.REV.CODE of 1954, § 7806. Construction of title
   (a) Cross References.—The cross references in this title to other portions of the title, or other provisions of law, where the word "see" is used, are made only for convenience, and shall be given no legal effect.
   (b) Arrangement and classification.— No inference, implication, or presumption

of legislative construction shall be drawn or made by reason of the location or grouping of any particular section or provision or portion of this title * * *.

7. As the Tax Court stated:
   The tax under section 1201(a) is provided as an alternative to the tax under section 821(a) (1) but *not* to that under

Both the Commissioner and petitioner have made numerous references to the legislative history of sections 821 and 1201(a), as found in the Revenue Act amendments of 1942. Pertinently this history may be summarized: "It became apparent * * * that the section on mutual insurance companies would be amended to produce more revenue from this class of taxpayers."[8] And "no other conclusion can be gained than that the Congressional intent [in regard to the capital gains alternative tax] was to stimulate the transfer of capital assets in order to produce more tax, as well as free up capital for investment in 'new productive enterprises.' "[9] Congress accordingly provided in section 821(a) (1) for a tax on investment income of mutual companies which includes capital gain income taxed at the regular corporate tax rate, or a 1% tax on net premium income, specifically excluding capital gains, under section 821(a) (2), whichever was greater; and it placed a maximum rate upon the tax upon corporate capital gains by amending section 117(c) of the 1939 Code, the predecessor to section 1201(a) of the 1954 Code, as an inducement to the selling and exchanging of capital assets with consequent taxes upon the resulting capital gains. But we do not think that Congress intended that if the computation of tax on "investment income" is greater than the computation of the tax on "premium income" and greater than the computed alternative tax, the latter is the tax liability even though the computed tax on "premium income" would be greater than the alternative tax. Congress was seeking more, not less, tax money. The tax relief under section 1201(a) was with respect to investments, pursuant to the legislative purpose, and not

intended to relieve mutual companies from tax upon "premium income" if that was the "greater."

■ We conclude that the Tax Court's decision on this issue is right; that since, for the years here in question, the tax computed under section 821(a) (1) is greater than the tax computed under section 1201(a), the latter is substituted for the former; and that since the computed tax under section 821(a) (2) is greater than that under section 1201(a), the computed tax under section 821(a) (2) is Meridian's tax liability. The rule of strict construction relied upon is not intended to subvert the intention of Congress, but to find the intention. We think the Tax Court found the true intention.

■ We see no merit in the contention that because of the adjustment and refund of Meridian's 1958 taxes, it is inequitable and "not right" to permit assessments of deficiencies and interest, and recovery of refund, where Meridian followed the instructions for filing its 1958 income tax return, was paid a refund upon the Commissioner's "correction" of that return, filed its 1959 return in accordance with the "correction" only to have the original "correction" corrected, the original uncorrected 1958 return approved and refund reclaimed and the 1959 return "corrected" to conform with the original 1958 return. We agree with the Tax Court that there was a mistake of law which the Commissioner within a year where the statute of limitations has not run, has power to correct. Automobile Club of Mich. v. Commissioner of Internal Revenue, 353 U.S. 180, 183, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957).

We do not reach the remaining issue.[10]

Affirmed.

section 821(a) (2). Had petitioner's viewpoint been the intent of Congress, the tax could have been provided as an alternative to the tax under section 821(a) instead of only the tax under section 821(a) (1).

8. Petitioner's Brief, p. 25.

9. Petitioner's Reply Brief, p. 7.

10. The second issue, which petitioner describes as a question of law "which concerns the tax treatment of the difference between the purchase price and redemption value of United States * * * Saving Bonds," was decided adversely to petitioner by the Tax Court. The parties here agree that, because of the peculiar construction of § 821(a), we do not have to decide this issue unless we reverse the Tax Court on the main issue.