T.C. Memo. 1998-352

UNITED STATES TAX COURT

THEODORE EDWARD HAGADONE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6022-97.                    Filed October 5, 1998.

Theodore Edward Hagadone, pro se.

Anne W. Durning, for respondent.

MEMORANDUM OPINION

DINAN, Special Trial Judge:  This case was heard pursuant to

the provisions of section 7443A(b)(3) and Rules 180, 181, and

182.[1]

_____

[1]      Unless otherwise indicated, all section references are
to the Internal Revenue Code in effect for the taxable year in
issue.  All Rule references are to the Tax Court Rules of
Practice and Procedure.

In a statutory notice of deficiency dated February 27, 1997, respondent determined a deficiency in petitioner's Federal income tax for 1994 in the amount of $3,934.

The issues for decision are:  (1) Whether respondent is bound by the contents of a report issued by his Problem Resolution Officer subsequent to the issuance of the statutory notice of deficiency; and (2) whether this Court has jurisdiction to consider petitioner's claim for an abatement of interest.

Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by this reference.  Petitioner resided in Hereford, Arizona, on the date the petition was filed in this case.

Petitioner timely filed his Federal income tax return for 1994 on which he correctly reported his filing status as single.

In the statutory notice of deficiency in this case respondent determined that petitioner received but failed to report on his 1994 return the following amounts of income:

| | |
|---|---|
| Pensions and annuities | $2,359 |
| IRA distributions | 3,216 |
| Taxable Social Security benefits | 7,188 |
| Gambling income | 26 |

With respect to the unreported pension and annuity income which petitioner received from the Office of Personnel Management Retirement Programs (the OPM Retirement Program), respondent concedes that petitioner is entitled to exclude from his gross income any portion of the amount received which is attributable

to his original investment.[2]  As a result of the increase in petitioner's adjusted gross income, respondent also made a computational adjustment to petitioner's allowable casualty loss deduction.  In the statutory notice of deficiency, respondent determined petitioner's Federal income tax liability for 1994 to be $10,238.

After the statutory notice of deficiency was issued on February 25, 1997, petitioner communicated with respondent's Ogden Service Center by letter of February 27, 1997, and by telephone on April 1, 1997, to discuss the adjustments determined in the statutory notice.

In a letter to petitioner dated April 9, 1997 (the letter), from a member of respondent's Problem Resolution Staff, which enclosed a report that purportedly supplemented the February 25, 1997, notice of deficiency, the letter explained to petitioner the reasons for the adjustments made in the statutory notice.  It further informed petitioner that it was determined that he was entitled to an additional gambling loss in the amount of $126. In recalculating petitioner's 1994 Federal income tax liability,

---

[2]      Petitioner received annuity payments from the OPM Retirement Program in the total amount of $2,359 during 1994. Petitioner's original contributions to the OPM Retirement Program amounted to $2,511.  At trial, respondent's counsel stated to the Court that respondent would be able to calculate the excludable portion of the annuity payments from petitioner's responses to her line of questioning with respect to this matter.  We therefore direct respondent to take into account the excludable amount of the annuity payments in the Rule 155 computation.

the letter erroneously determined the amount of the tax to be $9,202, by applying the tax rate schedule for "head of household", as opposed to petitioner's tax liability as determined in the statutory notice which used the "single" tax rate schedule.

Petitioner stipulated that he received the unreported amounts of income determined by respondent. Respondent concedes that petitioner is entitled to the additional Schedule A gambling loss deduction in the amount of $126 allowed in the April 9, 1997, letter. Respondent maintains, however, that petitioner's proper filing status is single and that as a result of the increased gambling loss deduction the amount of the "revised deficiency" is $3,906, based on a Federal income tax liability for 1994 in the amount of $10,210.[3]

The first issue for decision is whether respondent is bound by the report issued on April 9, 1997. Petitioner argues that the Court should hold that he is liable only for the tax liability determined in the report. He contends that the report constitutes a contract between himself and respondent. We disagree. It is well established that as a general rule the Commissioner is finally and conclusively bound by an agreement with a taxpayer only if the parties enter into a closing

---

[3] This amount does not take into account respondent's forthcoming adjustment to the taxable amount of the annuity payments received by petitioner during 1994. See supra note 2.

agreement under the provisions of section 7121.[4]  Holland v. Commissioner, 70 T.C. 1046, 1048-1049 (1978), affd. 622 F.2d 95 (4th Cir. 1980); Hudock v. Commissioner, 65 T.C. 351, 362 (1975). The statutory procedure is ordinarily the exclusive method by which the Commissioner may be finally and conclusively bound. Botany Worsted Mills v. United States, 278 U.S. 282, 288 (1929); Estate of Meyer v. Commissioner, 58 T.C. 69, 70-71 (1972).  "The very fact that Congress has provided a way in which the Internal Revenue Department may bind itself, precludes the possibility of its being bound by some other procedure."  Knapp-Monarch Co. v. Commissioner, 139 F.2d 863, 864 (8th Cir. 1944), affg. 1 T.C. 59 (1942).

It is also well established that the Commissioner is not bound by the unauthorized and erroneous actions of his employees where the law dictates a different result.  See Keystone Auto. Club Cas. Co. v. Commissioner, 40 B.T.A. 291 (1939), as supplemented 42 B.T.A. 356 (1940), affd. 122 F.2d 886 (3d Cir. 1941); see also Bagnell v. Commissioner, T.C. Memo. 1993-378 (and cases cited therein).  We have reviewed the April 9, 1997, report and find that it erroneously used "head of household" filing status to compute petitioner's tax liability.

---

[4]  Sec. 7121(b) provides an exception to this rule upon a showing of fraud, or malfeasance or misrepresentation of a material fact.

Accordingly, we hold that respondent is not bound by the determinations made in the report, except to the extent that respondent's counsel conceded in her trial memorandum the additional allowance for gambling losses in the amount of $126.

The second issue for decision is whether this Court has jurisdiction to consider petitioner's claim seeking abatement of interest.

Section 6404(g), as enacted by the Taxpayer Bill of Rights 2 (TBOR 2), Pub. L. 104-168, sec. 302(a), 110 Stat. 1452, 1457 (1996), authorizes us to review denials by the Commissioner of requests for abatement of interest under section 6404. White v. Commissioner, 109 T.C. 96 (1997); Banat v. Commissioner, 109 T.C. 92 (1997); Goettee v. Commissioner, T.C. Memo. 1997-454. Section 6404(g) provides, in pertinent part, as follows:

> (g) Review of Denial of Request for Abatement of Interest.--
>
>      (1) In General.--The Tax Court shall have jurisdiction over any action brought by a taxpayer who meets the requirements referred to in section 7430(c)(4)(A)(ii) to determine whether the Secretary's failure to abate interest under this section was an abuse of discretion, and may order an abatement, if such action is brought within 180 days after the date of the mailing of the Secretary's final determination not to abate such interest.

TBOR 2 section 302(b), 110 Stat. 1458, provides that section 6404(g) applies "to requests for abatement after the date of the enactment of this Act."  TBOR 2 was enacted on July 30, 1996.

In this case, the record does not show that a formal request for abatement of interest was made to respondent or that a notice of final determination not to abate interest pursuant to section 6404(e) was mailed to petitioner. In a case seeking the review of the failure to abate interest, jurisdiction in this Court depends, in part, upon the issuance of a valid notice of final determination not to abate interest. Sec. 6404(g)(1); Rule 280(b)(1). Because no notice of final determination denying a request for abatement of interest has been issued to petitioner, we hold that we lack jurisdiction to consider petitioner's claim seeking abatement of interest.[5] Banat v. Commissioner, supra at 95.

To reflect the foregoing,

Decision will be entered

under Rule 155.

---

[5] Petitioner is still free to formally request an abatement of interest from respondent pursuant to sec. 6404(e). If his request is denied, he may then file a "Petition for Review of Failure to Abate Interest under Code Section 6404" with this Court. Rule 281.